■ In the Matter of VILLAGE OF WESTBURY, Appellant, v DEPARTMENT OF TRANSPORTATION OF THE STATE OF NEW YORK et al., Respondents.—In a proceeding pursuant to CPLR article 78 to review a negative declaration under the New York State Environmental Quality Review Act (ECL art 8; hereinafter SEQRA) and final approval of the Northern State Parkway/Meadowbrook State Parkway Interchange Reconstruction Project (hereinafter the interchange project) by the respondent Department of Transportation of the State of New York (hereinafter the department) and to enjoin the department from going forward with the interchange project until it has complied with SEQRA, the petitioner appeals from a judgment of the Supreme Court, Nassau County (Robbins, J.), dated June 15, 1988, which dismissed the proceeding.

Ordered that the judgment is reversed, on the law, with

costs, and the petition is granted to the extent that the negative declaration is annulled, the matter is remitted to the department for reconsideration of the cumulative impact of the widening of the Northern State Parkway and any other related projects consistent with SEQRA, and for a determination of whether the action is Type I or unlisted and whether an environmental impact statement should issue, and the department and its agents are enjoined from further construction on the interchange project, effective four months from the service upon the department of a copy of this decision and order with notice of entry, to afford the department an opportunity to comply with SEQRA.

On July 30, 1987, the department issued a final approval for its SEQRA negative declaration/final design report for the interchange project after a draft environmental assessment had been completed, publicly commented on, and revised. Thereafter, on August 11, 1987, it mailed a copy to the Mayor of the petitioner village who received it on August 18, 1987. Notices were also published in Newsday on August 11, 1987, and in the Westbury Times on September 3, 1987.

The village commenced this proceeding on December 18, 1987, alleging, *inter alia,* that the department failed to consider the cumulative impact of the interchange project in conjunction with the planned widening of the Northern State Parkway from 4 to 8 lanes (hereinafter the widening project) which was allegedly to commence after the interchange project. It was also asserted that, *inter alia,* other projects were planned by the department and similarly not considered in its environmental assessment (hereinafter EA), and that the project was erroneously classified as an "unlisted" rather than a Type I action warranting the generation of an environmental impact statement (hereinafter EIS).

We initially note that this proceeding is not time barred by the four-month Statute of Limitations. While there is no specific Statute of Limitations governing proceedings to challenge administrative determinations in violation of SEQRA, the issue revolves around when a "final determination" has been rendered by the administrative agency and when the determination becomes final and binding on the petitioner in the sense that it has an immediate and substantial impact *(see,* CPLR 7801 [1]; 217). We find that the limitation period did not commence to run until the petitioner was actually notified on August 18, 1987, and that the proceeding was timely *(see, Matter of Edmead v McGuire,* 67 NY2d 714, 716; *Matter of Edelman v Axelrod,* 111 AD2d 468, 469).

The department's contentions that the widening project is not a planned project, that it is independent of the interchange project and, that it is a mere recommendation which still has no approval, are belied by the department's own documents, which are replete with references to the widening project as a project with a construction schedule for 1988-1989, commencing upon completion of the interchange project. Indeed, the removal of the reconstruction of the Carle Road Bridge from the interchange project, and the deferral of that reconstruction to be part of the widening project, indicates that the interchange project and the widening project may be dependent upon one another.

Under the regulations of the Department of Environmental Conservation (hereinafter DEC), one of the criteria for determining whether an action is Type I or unlisted is whether "two or more related actions undertaken, funded or approved by an agency * * * considered cumulatively would meet one or more of the criteria in this section" (6 NYCRR 617.11 [a] [11]; see also, 6 NYCRR 617.11 [b], [c]). The department's own regulations resemble those of the DEC and are even broader, since they concern actions directly "undertaken, funded or permitted by the department" (17 NYCRR 15.11 [a] [11]; see also, 17 NYCRR 15.11 [b], [c]). Moreover, with respect to projects which are to be developed in phases or stages: "agencies should address not only the site specific impacts of the individual project under consideration, but also, in more general or conceptual terms, the cumulative effects on the environment and the existing natural resource base of subsequent phases of a larger project or series of projects that may be developed in the future" (6 NYCRR 617.15 [e]; see also, 6 NYCRR 617.15 [a], [b] [generic impact statement]).

We find that the widening project is part of an over-all plan by the department, and its cumulative effect, if any, should have been considered prior to the department's issuance of the negative declaration (see, Matter of Save the Pine Bush v City of Albany, 70 NY2d 193, 206; Chinese Staff & Workers Assn. v City of New York, 68 NY2d 359). Although a 15% increase in traffic volume was projected based upon "other proposed parkway improvements", it is unclear whether this addresses the impact of the widening project, and in any event, the EA prepared by the department failed to address the cumulative impact of the widening project on other areas of environmental concern (see, ECL 8-0105 [6]; 6 NYCRR 617.11; 17 NYCRR 15.11). The failure to consider the cumulative impact prior to issuance of the negative declaration constituted a violation of

the department's obligation to take a "hard look" under SEQRA, and therefore, the determination of nonsignificance was arbitrary and capricious and is annulled *(see, Matter of Save the Pine Bush v City of Albany, supra,* at 206-207; *Chinese Staff & Workers Assn. v City of New York, supra,* at 367-368).

We therefore remit the matter to the department for consideration of the cumulative impact of the widening project and the interchange project, whether the action is Type I or unlisted, and whether an EIS should issue *(see, Matter of Schenectady Chems. v Flacke,* 83 AD2d 460, 463-464). Since construction has already commenced on the interchange project, the injunction granted herein is stayed for a period of four months from service upon the department of a copy of this decision and order to afford the department an opportunity to comply with SEQRA *(see, H.O.M.E.S. v New York State Urban Dev. Corp.,* 69 AD2d 222, 235).

We have considered the parties' remaining contentions and find them to be without merit. Thompson, J. P., Rubin, Spatt and Balletta, JJ., concur.