Matter of Seneca Meadows, Inc. v Town of Seneca Falls (2026 NY Slip Op 01687)

Matter of Seneca Meadows, Inc. v Town of Seneca Falls

2026 NY Slip Op 01687

Decided on March 20, 2026

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 20, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: BANNISTER, J.P., MONTOUR, SMITH, DELCONTE, AND HANNAH, JJ.

648/24 CA 23-01878

[*1]IN THE MATTER OF SENECA MEADOWS, INC., PETITIONER-PLAINTIFF-RESPONDENT,
vTOWN OF SENECA FALLS, TOWN OF SENECA FALLS TOWN BOARD, RESPONDENTS-DEFENDANTS, DIXIE C. LEMMON AND CONCERNED CITIZENS OF SENECA COUNTY, INC., RESPONDENTS-DEFENDANTS-APPELLANTS. 

LAW OFFICE OF DOUGLAS H. ZAMELIS, COOPERSTOWN (DOUGLAS H. ZAMELIS OF COUNSEL), FOR RESPONDENTS-DEFENDANTS-APPELLANTS.
NIXON PEABODY LLP, ROCHESTER (ERIC M. FERRANTE OF COUNSEL), FOR PETITIONER-PLAINTIFF-RESPONDENT. 

 Appeal from an order and judgment (one paper) of the Supreme Court, Seneca County (Daniel J. Doyle, J.), dated June 8, 2023, in a proceeding pursuant to CPLR article 78 and declaratory judgment action. The order and judgment granted the motion of petitioner-plaintiff for partial summary judgment on its first cause of action and declared Town of Seneca Falls Local Law No. 3 of 2016 invalid. The order and judgment was reversed by order of this Court entered December 20, 2024 in a memorandum decision (233 AD3d 1430), and the Court of Appeals on December 16, 2025 reversed the order of this Court and remitted the case to this Court (— NY3d —, 2025 NY Slip Op 06961 [2025]). 
Now, upon remittitur from the Court of Appeals, it is hereby ORDERED that the order and judgment so appealed from is unanimously affirmed without costs.
Memorandum: Petitioner-plaintiff, Seneca Meadows, Inc. (SMI), owns and operates the only solid waste management facility, i.e., landfill, situated within respondent-defendant Town of Seneca Falls (Town). Respondent-defendant Town of Seneca Falls Town Board (Board), in response to the concerns expressed by certain residents about SMI's landfill, began considering whether to pass a local law to close the facility upon the expiration of SMI's existing permits. At a public hearing in late November 2016, the Town Attorney advised the Board that, before passing the law, it was "required to take a hard look at the action and determine its environmental significance" under the State Environmental Quality Review Act (SEQRA), but that such a SEQRA review was not before the Board that evening and would be conducted at a later date. A member of the Board who had introduced the proposed local law then submitted for consideration two documents drafted by her attorney: a short SEQRA Environmental Assessment Form (EAF) and a negative declaration to be issued by the Board that the proposed local law would not have a significant adverse environmental impact. The other Board members had not seen those documents prior to the hearing, but the Board nonetheless voted to adopt both documents at the same hearing. One week later, the Board enacted the Town of Seneca Falls Local Law No. 3 of 2016, which would have prohibited the continued operation of solid waste disposal facilities in the Town beyond December 31, 2025, i.e., upon expiration of SMI's current permits.
SMI commenced the instant hybrid proceeding and action asserting various causes of action, including the first cause of action, for failure of the Board to comply with the requirements of SEQRA. SMI subsequently moved for partial summary judgment on its first cause of action. Respondents-defendants Dixie C. Lemmon and Concerned Citizens of Seneca [*2]County, Inc. (collectively, respondents) opposed the motion, contending, inter alia, that SMI lacked standing to assert a cause of action under SEQRA. Supreme Court, after concluding that SMI had standing to challenge the Board's compliance with SEQRA, determined that the Board failed to identify the relevant areas of environmental concern, failed to take a hard look at them, and failed to provide a reasoned elaboration of the basis for its determination. The court thus granted SMI's motion and declared the local law invalid.
When the appeal was previously before us, a three-judge majority concluded that SMI lacked standing to challenge the Board's compliance with SEQRA because SMI "failed to establish, or even allege, that it had suffered or would suffer an environmental injury" (Matter of Seneca Meadows, Inc. v Town of Seneca Falls, 233 AD3d 1430, 1431 [4th Dept 2024], revd — NY3d —, 2025 NY Slip Op 06961 [2025]). The majority therefore reversed the order and judgment, denied SMI's motion for partial summary judgment, and vacated the declaration (id. at 1430). The two-judge dissent would have affirmed the order and judgment because, under applicable Court of Appeals precedent (see Matter of Gernatt Asphalt Prods. v Town of Sardinia, 87 NY2d 668 [1996] [Gernatt]; Matter of Har Enters. v Town of Brookhaven, 74 NY2d 524 [1989] [Har]), SMI had standing to assert a SEQRA claim by virtue of its status as owner of the property subject to the proposed governmental action without the need to allege an environmental injury, and because the court properly determined that the Board failed to comply with SEQRA (Seneca Meadows, Inc., 233 AD3d at 1432-1438 [Smith, J.P., & Bannister, J., dissenting]).
The Court of Appeals unanimously reversed our majority decision and endorsed the position that had been taken by the dissent with respect to standing (Seneca Meadows, Inc., — NY3d at —, 2025 NY Slip Op 06961, *1-2). Specifically, the Court of Appeals held that, "in accordance with . . . clearly established precedent, . . . SMI has standing as an affected property owner to challenge the Board's compliance with SEQRA" (id. at &mdash, 2025 NY Slip Op 06961, *1). The Court of Appeals noted that its case law had "established that 'no such specific allegation [of environmental harm] is necessary' when the petitioner's property is 'the very subject' of the government's action" (id. at &mdash, 2025 NY Slip Op 06961, *2, quoting Har, 74 NY2d at 526). Applying its precedent, the Court of Appeals concluded that "SMI 'has a legally cognizable interest in being assured that the [T]own satisfied SEQRA before taking action to' prohibit the operation of SMI's waste facility" (id. at &mdash, 2025 NY Slip Op 06961, *2). The Court of Appeals remitted the matter to us to consider the merits of SMI's SEQRA claim (id. at —, 2025 NY Slip Op 06961, *1).
Upon remittal, we now affirm the order and judgment on the ground that the court properly determined that the Board failed to comply with its substantive obligations under SEQRA.
SEQRA "is a legislative attempt to ensure that state and local agencies consider the environmental impact of their proposed actions" (Matter of Spitzer v Farrell, 100 NY2d 186, 190 [2003]). "By requiring strict adherence to review procedures, the act forces agencies to 'strike a balance between social and economic goals and concerns about the environment' " (id., quoting Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 414 [1986]). "All 'actions' subject to SEQRA (i.e., Type I and unlisted actions) initially require the preparation of an EAF, whose purpose is to aid an agency 'in determining the environmental significance or nonsignificance of actions' " (Matter of City Council of City of Watervliet v Town Bd. of Town of Colonie, 3 NY3d 508, 519 [2004] [Watervliet], quoting 6 NYCRR 617.2 [m]). "[A]n agency is required to prepare an environmental impact statement (EIS) if it determines that a proposed action 'may have a significant effect on the environment' " (Spitzer, 100 NY2d at 190, quoting ECL 8-0109 [2]). "Conversely, an EIS will not be required and the agency may issue a negative declaration where it concludes 'that there will be no adverse environmental impacts or that the identified adverse environmental impacts will not be significant' " (Watervliet, 3 NY3d at 520, quoting 6 NYCRR 617.7 [a] [2]; see Spitzer, 100 NY2d at 190). "In making its initial determination, the agency will study many of the same concerns that must be assessed in an EIS, including both long- and short-term environmental effects" (Spitzer, 100 NY2d at 190). "Although the threshold triggering an EIS is relatively low, a 'negative declaration is properly issued when the agenc[y] ha[s] made a thorough investigation of the problems involved and reasonably exercised [its] discretion' " (id., quoting Chinese Staff & Workers Assn. v City of New York, 68 NY2d 359, 364 [1986]; see Matter of Chinese Staff & Workers' Assn. v Burden, 19 [*3]NY3d 922, 923-924 [2012]).
"Judicial review of a lead agency's SEQRA determination is limited to whether the determination was made in accordance with lawful procedure and whether, substantively, the determination 'was affected by an error of law or was arbitrary and capricious or an abuse of discretion' " (Akpan v Koch, 75 NY2d 561, 570 [1990], quoting CPLR 7803 [3]). "In assessing an agency's compliance with the substantive mandates of the statute, the courts must review the record to determine whether the agency identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination" (id. [internal quotation marks omitted]). "An agency's compliance with its substantive SEQRA obligations is governed by a rule of reason and the extent to which particular environmental factors are to be considered varies in accordance with the circumstances and nature of particular proposals" (id.). Similarly, an agency has "considerable latitude evaluating environmental effects and choosing between alternative measures" (id.). "While judicial review must be meaningful, the courts may not substitute their judgment for that of the agency for it is not their role to 'weigh the desirability of any action or [to] choose among alternatives' " (id.). "Nevertheless, an agency, acting as a rational decision maker, must have conducted an investigation and reasonably exercised its discretion so as to make a reasoned elaboration as to the effect of a proposed action on a particular environmental concern" (id. at 571). "Thus, while a court is not free to substitute its judgment for that of the agency on substantive matters, the court must ensure that, in light of the circumstances of a particular case, the agency has given due consideration to pertinent environmental factors" (id.).
Here, we conclude that the court properly determined that the Board issued the negative declaration in violation of its substantive obligations under SEQRA inasmuch as the Board failed to "identif[y] the relevant areas of environmental concern, [failed to take] a 'hard look' at them, and [failed to provide] a 'reasoned elaboration' of the basis for its determination" (Jackson, 67 NY2d at 417; see Matter of Kahn v Pasnik, 90 NY2d 569, 574 [1997]; Matter of Frank J. Ludovico Sculpture Trail Corp. v Town of Seneca Falls, 173 AD3d 1718, 1718-1720 [4th Dept 2019] [Ludovico Sculpture Trail]; Matter of Pyramid Co. of Watertown v Planning Bd. of Town of Watertown, 24 AD3d 1312, 1313-1314 [4th Dept 2005], lv dismissed 7 NY3d 803 [2006]).
Respondents contend that the Board was not obligated to identify and consider that closure of the landfill could result in negative environmental impacts given that the extensive amount of waste disposed of at SMI's facility would need to be rerouted to other locations, thereby increasing greenhouse gas emissions generated by hauling vehicles, because SMI never raised that concern and such a potential environmental consequence was speculative in any event. We agree with SMI that respondents' contention is both legally and factually flawed. Under SEQRA, it was the obligation of the Board—not SMI—to "identif[y] the relevant areas of environmental concern" (Jackson, 67 NY2d at 417; see e.g. Matter of Town of Waterford v New York State Dept. of Envtl. Conservation, 187 AD3d 1437, 1442 [3d Dept 2020]; Ludovico Sculpture Trail, 173 AD3d at 1718; Matter of Modern Landfill v Jorling, 161 AD2d 1112, 1114 [4th Dept 1990], lv denied 76 NY2d 715 [1990]). In any event, as SMI correctly notes, its air quality expert specifically warned during the late November 2016 hearing that closure of the landfill "could likely result in an increase in greenhouse gas emissions, as waste may have to be transported a greater distance."
It is true, as respondents point out, that "[a]n agency complying with SEQRA need not investigate every conceivable environmental problem; it may, within reasonable limits, use its discretion in selecting which ones are relevant" (Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d 297, 307 [2009]). Nonetheless, "in making determinations of significance, the reviewing agenc[y] must look at impacts which may be reasonably expected to result from the proposed action and compare them against an illustrative list of criteria" that are considered indicators of significant adverse impacts on the environment (Matter of Farrington Close Condominium Bd. of Mgrs. v Incorporated Vil. of Southampton, 205 AD2d 623, 625 [2d Dept 1994]; see 6 NYCRR 617.7 [c] [1]). Here, as the court appropriately noted in determining that the Board had erred in simply assuming that closure of the landfill would have no environmental impacts, the transportation of waste to other locations and the concomitant increase in greenhouse gas emissions by hauling vehicles constituted a nonspeculative impact that could be reasonably expected to result from the proposed closure of the landfill, particularly considering the size of SMI's operation (see Spitzer, 100 NY2d at 189-191; Waterford, 187 [*4]AD3d at 1443).
Contrary to respondents' further suggestion, the court expressly declined to reason that the Board's SEQRA review was conducted too quickly to be valid (cf. Gernatt, 87 NY2d at 689-690); instead, the court properly determined that the Board "did not take a hard look at the relevant areas of environmental concern before issuing the negative declaration" (Kahn, 90 NY2d at 574). Specifically, as the court concluded, the record establishes that the Board members, other than the Board member who submitted the EAF and the negative declaration, had not seen the EAF or the negative declaration prepared by that Board member's attorney prior to the circulation of copies thereof near the end of the late November 2016 hearing. Although the Board member who submitted the EAF and negative declaration read aloud from those documents at the Board meeting, the Board engaged in no discussion of the contents of those documents before voting to adopt them, and there is no indication whatsoever that the Board fulfilled its obligation to "thoroughly analyze the identified relevant areas of environmental concern to determine if the action may have a significant adverse impact on the environment" (6 NYCRR 617.7 [b] [3]). Thus, notwithstanding respondents' attempt to divert attention to the longer time period over which the Board had considered whether to adopt the local law itself, the record establishes that, with respect to its substantive obligations under SEQRA to consider the environmental significance of that law, the "mere 'cursory examination' such as that performed [by the Board] here[ ] is insufficient" to demonstrate that it took the requisite hard look at the relevant areas of environmental concern (Pyramid Co. of Watertown, 24 AD3d at 1315; cf. Gernatt, 87 NY2d at 688-689).
Furthermore, contrary to respondents' contention, we conclude that the court properly determined that the Board "failed to make a reasoned elaboration of the basis for its determination" (Ludovico Sculpture Trail, 173 AD3d at 1719; see Tupper v City of Syracuse, 71 AD3d 1460, 1462 [4th Dept 2010]; Matter of Tonery v Planning Bd. of Town of Hamlin, 256 AD2d 1097, 1098 [4th Dept 1998]).
In light of our determination that the court properly granted SMI's motion and declared the local law invalid on the ground that the Board failed to comply with its substantive obligations under SEQRA, we need not address the alternative ground for affirmance advanced by SMI that the Board committed procedural violations of SEQRA.
Entered: March 20, 2026
Ann Dillon Flynn
Clerk of the Court